Is Dana Lauer here? Dana is the teacher who teaches 22 terrific students from York and they're here looking at all that we have to offer and learning all we have to offer in Historic Philadelphia. Dana won our PennCord civics curriculum contest. Her AP course in civics and government was deemed the best across the state. We had a contest so the prize was that the students, her class could come to Philadelphia and go to the National Constitution Center. It was just a bonus that they decided to pick this case to come here and we thought because it has to do with the Commerce Clause and probably fitting with their knowledge of the Constitution it was a good idea. So welcome and congratulations again to Dana. Alright we'll hear our first case which is Tri-MGroup v. Sharp. Good morning your honors. My name is Jennifer Davis Oliva and I'm here on behalf of the Secretary of the Dollar Department of Labor. I respectfully request to reserve five minutes of my time for rebuttal. The congressional issue in this case is related to the Commerce Clause and there are three exceptions that have been carved out to the Commerce Clause. One of which was the Congressional Consent Exception and one of which was not argued at all below, correct? You're absolutely right your honor. Why should we hear it now, the market participant issue? The state's argument here your honor is how cases were argued is the General Trial Council that does the impersonate provisions for the Department of Labor took the case on. But is that an exceptional circumstance that should warrant our finding that we will waive the waiver or that we will ignore the waiver? Your honor, the exceptional circumstances were specifically stated in our review of the bill in the court book. The rule of the court is remanded discretionary and the two large categories of exceptions are our resolution of the actual legal question presented to the court of appeals is beyond doubt and I would argue that this case falls squarely within all Supreme Court testimony and to significant cases from this court that control. So it would fall into that category. And then the second category which is a little more amorphous is non-conjustice and unlawful as a result. The factors this court has looked at over time in considering that factor have been are there significant issues at play? And significant issues the court has pointed to are federalism, state sovereignty, separation of powers type of issues. There's been a question that I think in the Commerce Clause challenged to a state regulation or state law, state contractual provision indicates a federalism issue. All right. Then why don't you get to the merits? Let me just follow up on that. Are you just talking about in the grand scheme of things for the state's budget a very modest amount of money? So what's exceptional about it? Why not just enforce the waiver and then in the next case you can make your market participant argument that you shouldn't waive in this case? Excellent question, Your Honor. But actually because the law right now is struck down. When the state is blessed about our best program, our provisional wage law applies to almost every state contract. In construction, the $100,000 is automatically incorporated into the funding procuring contract for every other agency that's executing any kind of public works contract. So would any one of those contracts just go to the district court and declare it to a judgment action and make your market participant argument? Isn't that the proper way to do it? The state's problem right now is actually in this box about how to manage the state's program. We're looking forward to going ahead and changing that. But what Judge Hart is saying is you could tomorrow just go into court on any of these contracts and level the challenge that it's a market participant. Yes, Your Honor. In fact, our case we have had a conflict between the military and the state. So that's not a concern from the state. We rarely have a protester. They sometimes voluntarily bid. They bid at the beginning of the year. It's exactly what happened here. It's highly unusual to have a conflict. And that's going to be important in this case because they don't want to judge anyone who has a conflict when they voluntarily sign it because there's a contract state action claim that the state can bring. So you really don't get into this situation. Try and avoid it here until it's basically finished with the work on the project to bring the claim. So in all that, the situation will be itself. We've been running our best program since 1977. This provision has been enacted in all the residency requirements since 1999. It took us a number of years to get to this. So that's a concern. The second big concern is that, and the truth of the matter is that I've gotten a lot of radical calls from other jurisdictions. They're concerned about both their current programs, many of which states do have requirements, tons of residency requirements. And 37 states have no residency provisions in their just general public works programs. And some of them are very extravagant. In particular, you're talking about a small percentage of the population in term classes. There's about 85% who haven't completed in three years even their largest program. Some states have a 3% discount on top of their states. Some states have, but it's a tie with state laws. A lot of these jurisdictions have contacted us and are incredibly concerned that as we move along, certain states challenge us in their district courts for all of the state contracts. Let's get to the merits. There are fines imposed here if you violate this law. Is that correct? How, given the fact that there are fines imposed, how can you contend that this is not a regulatory provision? That's not the point. The point is that there is a provision that you're relying upon. You're saying you're just a market participant. The provision says if you don't comply with this, you're fine. How is that not a regulation? Well, it's the same exact regulatory provision you're talking about are incorporated in the contract. And we would be able to validate almost any construction contract. If they were only in the contract, we'd have a different case. But the point is the contract cites what the regulation is. It is not a contractual provision, which is what most of the market participant situations involve. It is a regulation that has a fine. How do you distinguish that? Interestingly, most of the market participation cases, and this was a surprise to me as well, actually do involve some ordinances, statutes, or executive orders. The case in white was the executive order from the mayor of Boston, and Alexander's scrap is the case that came up with the market participation statute. But the executive order didn't say, and if you don't do this, you'll be sent to prison or a fine will be imposed, did it? That's what it refers to in criminal law. Well, okay, no fine imposed. It was not on its face regulatory, whereas this, would you not concede that on its face this is regulatory? No, Your Honor, we don't concede that because it only applies when the state is acting in return for labor services. When the Fifth and the Ninth Circuits have adopted tests for purposes of determining whether the state is acting in a proprietary or market participant capacity or in a regulatory capacity, do you agree with those tests? Those tests were adopted in a preemption case, a labor preemption case. But they address the question of market participant. Do you think the cases that look at whether the state is acting as a market participant in a preemption area cannot be applied in this one Congress class? I don't think they cannot be applied. I have two points on that. I'm going to ask that. First of all, the United States Court of Appeals in the Kenan case said it's a privilege and immunity challenge. In that case, there's an operation that said you clearly follow the law. You withdraw from the Congress class, but that's a resident's preference case. Exactly, which is exactly what we have here. So it's a very similar case. More importantly, the Third Circuit itself, in the case that the third time it says was A.R. Drew, it was also a privilege and immunity challenge. But the court there said explicitly this would pass most directly to a Congress class. In the following case, we said that the Prevailing Wage Act, the enforcement of the Prevailing Wage Act, the state was acting in regulatory capacity. If the state is just enforcing a prevailing wage and it's not expending state funds and it's not arguing the contract, I don't hear that. And I think this circuit agrees with me. And I think the case most directly on tonight doesn't tell the Booty's case. This court decided a case in 2004 called Hotel Booties v. Sage, and it's at 309.346. It was written by Judge Cheraw. The case has come for several reasons. It doesn't commonly answer the question. Is this in your brief? I'm not going to believe it, so I'm going to reply. But it is a preemption case. When you put it out here again, there's a distinction because the Supreme Court said so between preemption cases where Congress has acted and those Congress class cases which by definition do not have a preemption element to them explicitly. I'm confused. What issue or what are you pointing to the Hotel Booties case for? The Hotel Booties set up a two-part test. And the two-part test Judge Cheraw set up. He looked at any of the Carpenter-Allen arrangements of the circuit and he looked at the United Circuit cases. That's when he became chairman of Congress. He also looked at two DC circuit cases, all of which are extremely important. In addition, Judge Cheraw said, he said, here's the two-part test. Is this still active in the regulatory versus proprietary capacity? And what I like about the case is that's a very difficult word to apply for context. He says, here's what you need. The state is worth a million when it's not spending funds and it's not acquiring the contract. If it's not doing that, if it's acquiring the contract and it's not spending funds, then the state is acting as a proprietary capacity. He looked at the scope and he said the scope just passed away so the state is engaged in its proprietary interests by spending funds. And he's involved in bond issuance by the city of Pittsburgh, the redevelopment. Just for clarity, I don't see that in your reply brief, but we'll look at it. You say it's a resident's preference, but it really follows a line of cases that talk about an increased cost to out-of-state residents, burdening out-of-state. And that's clearly what this does. How do you distinguish this case from all the cases of Granholm and all the other cases that talk about the fact that when you increase the costs of out-of-state residents and you're burdening them that there is a violation of the Congress. I think that the case is easily distinguishable from Granholm because those licensing cases are distinctly different. And they're distinctly different for the very reasons I'm talking about right now. Licensing cases involve state-regulating, private-wide actions. In the other cases, it said to have a business in New York and to deal directly with the in-state New Yorkers. That's a private contract between the wholesaler and the manufacturer or the wholesaler and the retailer and the individual purchaser. Isn't the focus here on the permanent place of business requiring to have a registered premise? And that's really what the focus of this case is all about. Which only applies in our foreclosed contracts. No, it applies across the board. You can't have a registered premise if you don't have a permanent place of business in Delaware. Correct, but it can't have a discriminatory effect against an out-of-state, non-registered premise. And I know there's a requirement to try and answer this. It only applies to people who are registered and have a whole list of requirements that they must have, including the in-state provision and the train provisions and everything else. And it requires them to pay their career and journey rates of a percentage. Trying to cover Delaware in a private contractual situation, we must allow it for a minute. And it is annually limited for any of the reasons that impact the process. But the regulation doesn't refer to public works projects. It isn't limited to that. It's limited to the career and work aspect of it, The apprenticeship law itself does not have anything to do with program wage. What it says is, if you're a Delaware registered premise, you have to pay a percentage of whatever your company's journey rate is. You must have a journey rate, and you have to pay a 40%, 60%, up to 85% in the last year. It doesn't apply in a private contractual situation. It only applies to in-state companies who have decided to become Delaware contractors and the participants in the entities that they want to be contracted by. We'll let your opponent address that, and we'll hear from you on rebuttal. Thank you, Your Honor. Good morning, Your Honors. My name is Steven Sondheim, and I represent Trident. I think the key point here is that Delaware initiated a requirement in the regulation regarding the remittance of business that required Trident to become an apprentice sponsor and to compete on equal footing with Delaware contractors. The history of this is that prior to 1999, there was no permanent remittance of business requirement. Trident was an apprentice sponsor. Actually, they let them be an apprentice sponsor in record shows from 2000 to 2001. It wasn't until Trident was doing a particular job on the Veterans Home Project where they made a state claim in 2006 that, no, you can't pay apprentices rates. You have to pay a majority rate. Now, the real effect of that is that if you take the first-level apprentice and you apply and you take the difference between what a mechanic is making and a first-year apprentice is making, it comes to date on a 2,000-year basis. 2,000 an hour per year basis comes to $60,000 a year. We're not talking about small change. For each apprentice, there's a lot of money involved. I think it's clear that you're discriminating against a lot of state companies, but isn't that a big set-up? I mean, how do you get around the market participants? There's an exception. The state has a public vote contract. The state is acting as a market participant, procuring. Your Honor, I would say that there are three key points here. One is that we have to have entry in the market. The state hasn't entered the market here. This is not white. This is not leaves. The state is not acting in a proprietary manner. In fact, it's been held as you pointed out that the prevailing wage law is a regulation, and if you look at the history of this, we have actually these regs, the permanent lesson business regs were initiated by not the prevailing wage law, but by 19 Delaware Code Section 204, which is not the prevailing wage law. It doesn't have any spending component. That's number one. Number two is my law and Davis-Bacon and the Fitzgerald Act, both of which are pure regulation. Three, we have the regulations for the prevailing wage law and the apprentice training regulations all say, and as does the Fitzgerald Act,  But the most interesting thing is, if you look at the briefing in the lower court, the state said that in their summary judgment briefing, the state said the purpose of having a sponsor with a permanent place of business in Delaware is to effectuate the purpose behind the Fitzgerald Act and the apprentice regulations dash the safety and welfare of the apprentice. And that's in 313. But even if it does that, even if that's the intent, if in doing so the state is acting as a participant, i.e. as a builder of projects, isn't there an exception? Not at all, Your Honor. Judge Rendell, you have to have entry that's tied to regulation. And then it has to be for a legitimate goal. So let me, if I may, take a step back. The elephant in the room in this case is, as Judge Robinson probably found, this is retaliatory. We have evidence from 36 witnesses who said that there was a, to use Judge Robinson's words, a contest of wills between Pennsylvania and Delaware. So that's the background for the change in 99? Absolutely. Before 1999, there was no problem. After 99, we have this permanent place of business requirement. Why? Because Pennsylvania won't register or recognize apprentices from Delaware. And Delaware admitted, we decided not to regulate apprentices from Pennsylvania. And the court was, the witness said, he possibly told to try out with a representative. One of the reasons that Delaware wasn't recognizing Pennsylvania was because Pennsylvania wouldn't recognize Delaware. He possibly indicated that one of the reasons was because Pennsylvania didn't recognize Delaware. He said that there were a contest of wills over apprentice recognition, not those were. Those weren't his exact words. He said, I used a different word. We're doing a blank contest. And he said, I didn't use those words, but those are the effect. And Judge Robinson said, there's retaliation in this case. And based on the testimony of the 30B6 witness, she found the discrimination. But I want to get back to your, that distinguishes it from the market participant cases. But even if you assume that there's a premise to protect apprentices here, and that's satisfied by the permanent place of business requirement, which it isn't. The permanent place of business requirement has nothing to do with the spending. In white, the spending formed the goal, which was recognized to act for economic revitalization. In Reeves' cement case in South Dakota, the spending, that is the state's operation of the cement facility, formed the goal of making cement, which was in shortage, available to South Dakota residents. In Maryland, the goal was to get junk cars off the streets of Maryland. So they initiated a program that accomplished that. Here, we have spending, but everybody admits in the depositions, that the permanent place of business requirement does not advance this, have anything to do with safeguarding apprentices. There are a multitude of ways that they could, as Jeff Robinson said, that they could monitor... It has to be preferring in-state workers over out-of-state workers. Isn't it that simple? They cannot. Isn't that what this is about? Absolutely. This is to prefer Delaware labor over Pennsylvania labor. Or Delaware companies. Companies. And it wasn't the intent to prefer city residents over non-city residents. The goal in light was to correct past problems that occurred in the city of Austin regarding minorities and disadvantaged people, and to try to give them the work where the city was building these projects. The purpose and the goal were very closely tied together. If you look at Delaware, there may be a way of saying that. The executive order said that in all city contracts of buildings where money is being spent that's being administered by the city, i.e. federal funds, the contractors are required to have 50% minorities and then it enumerated some other requirements on those projects. And the court found that the city was acting as a market participant because they had a legitimate goal that was tied to spending. Here, the goal is to have what the regulation is, that they're requiring Triumph to have a permanent place of business in Delaware, which requires that either Triumph has to pay money to have a permanent place of business in Delaware, and if you take the Granville case, their reasoning is that if every state had a requirement where to sell wine in the state, if you had a facility in the state, you could have 50. So, Triumph has to have one. Triumph is a big company. They're not a fly-by-night company. They've done the work in Delaware forever, and as an aside, they have two office trailers there that they won't even let count. And they have trailers where people report to work, they have meetings in those trailers, they have time contracts with all the federal postings. One is with AstraZeneca and the other is with Naranjo, and they've been there, one of them, for 20 years. And they say, that doesn't count. It's an office. They can move it inside, and what would be the difference? So, one of the problems is it's so vague that we can't determine what a permanent place of business is, but besides that, there is no, the spending here is not tied to the permanent place of business requirement. It doesn't accomplish the goal of the apprentice programs. It doesn't do anything to further the goal of protecting apprentices. There's nothing in the record to show that it does. Is that correct? I would disagree with all due respect. I asked the deposition, does this advance the apprentice programs? And the admission was, no, by two different witnesses. I asked two people in labor law enforcement that question, and Tammy Jefferson said she doesn't know of any advantage for the requirement, and John Viola, and that's in page 11 of her deposition, which is part of the record, and John Viola said he can't say what the purpose of having a permanent place of business serves. He can't identify any relationship between the permanent place of business and the quality of the apprentice program, and that the quality of the apprentice program has not changed since they put this into effect. What the head of the training program, the manager of apprentice training said was, the main reason is to ensure compliance with our rules and regulations. That's purely regulatory. That's purely regulatory. And, in fact, as Judge Robinson found, it doesn't even do that, because they did an entire investigation of Tri-M without Tri-M having a permanent place of business in Delaware. They came to the site once, and then everything else was done by mail, fax, and phone. Yes, I'd love to. There are no exceptional circumstances here, we believe. This is a very small part, a very small part of a very large framework, the aim of which is to protect the welfare of apprentices. No, absolutely, I totally disagree with that. We have the retaliation issue, and how that applies. We have the application of the testimony I've just mentioned to this situation, where the state is unable to identify any purpose for the personal... I think Judge Van Esky's question was, isn't your position that this is facially invalid? No. Facially unconstitutional. Facially invalid, yes. So isn't that a pure question of law? Well, I disagree to the extent that there are facts that I think educate this issue. And what I mean by that is that if you were to say to me, am I sitting on his face as an invalid? Yes. The answer is yes. I am saying that. But when you're saying the market participant, for the market participant exception to apply, you have to evaluate whether there's a connection between the state's business purpose and the regulation issue. There has to be a legitimate goal, and here there's an illegitimate goal. Retaliation. They've never addressed that, and that's through this case, that there is retaliation. If a state had a hiring preference, if Pennsylvania adopted a hiring preference and Delaware says, we're going to adopt the same kind of hiring preference because Pennsylvania is discriminating against Delaware residents and so we're going to make Pennsylvania contractors come in and hire Delaware workers, that's demotivation. We never even get into it, right? That's the same situation we had in Stom, your Honor. In Stom, there was a facially neutral regulation, and the Assistant Commissioner of Labor said, Pennsylvania's not recognizing us, we're not going to recognize Pennsylvania. But that had to do with the registration of premises. It wasn't a permanent place of business requirement. But what I'm saying, and the answer to your question is, I do believe that it's facially on his face, it's discriminatory, but I also believe that the facts also educate this, and we've asked them, what's the reason for this? They don't know. Why would they make it? It's retaliatory. All their briefs say it's regulatory. So I think all those factors come in. But one important question on the waiver that we just asked is, in their briefing below, they cited Kentucky v. Davis for a proposition on the Congress clause. That is one of the very key participation cases. And all they had to do was turn one page. So does that mean it was waived or it wasn't waived? It was. They referred it to the case. It was waived. Well, she refers to the case, she cites it for a general proposition under the Congress clause. It doesn't make sense. It doesn't make sense. I'll ask. I'll ask. But she, on waiver, they raised standing, they raised redness, they raised, you named it, they raised it, and they raised this. Thank you. Thank you. Thank you. That's a position I'm taking. I was going to tell you that as of last, that Kentucky v. Davis was cited for the fact and that was Kentucky v. Davis as a participation case. That's false. And I thought it would be better if we had a reference that, yes, we did cite it for general propositions, and that is a donor Congress clause discussion, which the court does not adopt in that case. That case and the nine-callers case in November 2007 adopted a state traditional functions exception, a new exception, and I'm not going to tell you what the best way out is. One of the things I'd like to hear from you is if we were to apply the waiver doctrine to you, what harm would accrue? And I think that's one of the considerations if you're looking at exceptional circumstances. Are we going to do a great harm here if we were to apply the waiver? I think that there are a bunch of harms here. Somebody mentioned it in the district court this summer that are just obvious. Can you explain to Dr. Jefferson, as a deputant, if she can give you the reason? First of all, all of the deputants that were proposed said, I wasn't there when the laws changed in 1999, and frankly, I'd just be speculating. I mean, they were blessed by it, and they tried to come up with reasons based on their actual experience and experience in the program. Her answer is, that's because it's Delaware-funded businesses. Delaware-funded business contractors have to pay the franchise tax, and Delaware taxpayers subsidize the block of free schooling of anybody who is a representative of Delaware. So if you do the counter-balancing, they're getting over it. There's three bodies in the Delaware system that are coming to Delaware and doing this. They're not paying the franchise tax, which would apply if you were a company that doesn't contract. How do you establish a permanent place of business? I don't know if you answered Judge Wagner's question, too. I mean, how is it state-bombed, too, by application of the waiver rule? If we simply say we're not going to decide on this question, why are you going to keep it? The district court, at this time, I think it was May, and I think they're working on it, as I mentioned, is highlighting the two by the Purdue Wage Law investigation to this, because they've already started to check that. It's easy, because when you're doing the public works bondage in Delaware, you're in Delaware. There is enormous capacity on the site. You know what you need to do. If you're not in the capacity of the price for a back, what you can do is do a payout settlement procession. Is this in the record? Yes, ma'am. Yes, ma'am. This is in the record that there is a much different outcome if you are at much more expense if you don't. Sure. Can you send a letter to the sites exactly where in the appendix that's detailed? We're arguing the merits of that, though. I mean, I appreciate my colleague reiterating my question, because I don't think I've answered it. What is the harm? What harm does he fall as a state of Delaware? Does this reinforce what appears to be perhaps a straightforward waiver case? The harm to the state is that, like I said, this applies in all the state's public works contracts, which is impossible. That certainly now strikes a requirement in the apprenticeship rules and regulations. To say that Delaware would have to hire additional people simply would mean an ascertainment whether the other requirements were met. But there's not any precedent, though. If we rule against you on a waiver, you go back to Delaware and you're laboring under one district court opinion on merits, and you're free to challenge that tomorrow in the next case. Right? It's not as if our court would be deciding the merits against you and then your whole system is in an awkward order. I'm not understanding what the harm is. The system wouldn't be in an awkward order because every other jurisdiction would then be allowed to apply for Delaware apprentice sponsorship registration. And we have to go and evaluate Ohio's laws, Pennsylvania's laws, New Jersey's laws. Any non-VAT state, the 27 VAT states, we have to go and evaluate. Does that satisfy our education criteria? Does that satisfy the pre-training that we require? Are you telling us that you're just going to accept as ultimately corrective the district court's decision here if we apply a waiver against you? You're not going to live to fight it right away on the market participant issue? That's what I'm asking. I'm not sure whether we're going to live to fight it because this should go to the jurisdiction. And this court would be a waiver. And that's the law. And our district is going to go with it. It is the market participant issue solely a question of law. I mean, the record's been developed. Absolutely. Because this is the situation. All of the cases that each has been spurred by are every one of their programs was more expensive than Delaware's was. Let's take a look. What is the best case argument in this particular case? The city of Boston executed a law, a regulation, and said if we issue, if we give away a contract to a contractor, 50% of the votes in that contract must be city of Boston dollars. If that money were put into the Bureau of Marshals, the percentage is 10%. But that was one particular job, was it not? It was a $6.1 billion job. But recently the Supreme Court, as recently as 2008, talked about market participant as being specifically tailored to one job or a legitimate response to state procurement needs or procurement constraints or to local economic needs and identified those three ways you could be a market participant. How does this fit? Well, when we look at procurement needs, like I said, the discriminatory effect of these two systems, due process system, only applies when the state is procuring labor on construction property, not on a large scale. So there's no question that this only comes out in Delaware. It only applies when Delaware is expending state taxpayer dollars and is a party to a procurement contract. And there's never been a Delaware Commerce Bill case in any jurisdiction that's come out the other way. Trojan Technologies case is already coming to mind by this court. Judge Paul Blaine, the jury decision, said, here's the law. Pennsylvania required all of its subdivisions in the South to procure its annual project, annual Trojan project, statewide, only in American Steel, only in American-made steel. The court disposed of that. It's not disposed of that program. They're fine. And as I said, the other rule actually affects the discriminatory purpose against foreign steel. This is actually the Delaware Commerce Clause challenge, but it's the same analysis. When the state is buying steel, the state government is buying from one member. It's the exact same rule. My last point is I can just make, just because there's a lot of transparency, is that the Delaware Commerce Clause cases do not have a motive and purpose requirement. The court's never looked into that. He did not point to one Delaware Commerce Clause case where the court's still underneath. And, again, who does this? Who's inside? Well, in deciding whether it's discriminatory, you need to look at the legitimacy. Don't you? Look at the legitimacy of it. My idea is that he says, look at the purpose. Look at what the states say in their depositions. It's the things that they think the purposes were. The states can write anything off the end of this. The states can reject the test. And if there's two languages that are related to the purposes I'm asserting this court would apply, we would be either striking them both down or saying we're both bad. Thank you. Thank you. The case is well argued. We'll take it under advisement. We'll have a short recess. We'll be right back. The court is at recess.